**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ROBERT WALTER BEIGHEY and | ) | CASE NO. 17-31726 |
| PENNY COLLEEN BEIGHEY | ) | CHAPTER 7 |
| | ) | |
| Debtors | ) | |
| _____ | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

Before the Court is the Motion to Dismiss (the "Motion") [Doc. 23] filed by the United States Trustee ("UST") on August 7, 2017 and the Objection to U.S. Trustee's Motion to Dismiss filed by the Debtors Robert Beighey and Penny Beighey (the "Debtors") on September 20, 2017 (the "Response") [Doc. 33]. The United States Trustee's Motion is premised on the assertion that this Chapter 7 bankruptcy case should be dismissed pursuant to 11 U.S.C. § 707(b)(1)-(2) or 11 U.S.C. § 707(b)(3). The Court held an evidentiary hearing on the Motion on June 5, 2018. After carefully considering the evidence and arguments, the Court concludes that this Chapter 7 case must be dismissed under either § 707(b)(1)-(2) or § 707(b)(3). In accordance with Fed.R.Bankr.P. 7052 and 9014, the Court sets forth the following findings of fact and conclusions of law in support of its decision.

**II. Jurisdiction**

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b). Reference to the Court of this contested matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A).

**III. The Evidence**

Debtors filed for bankruptcy relief under Chapter 7 on May 25, 2017. Both Debtors are

employed. Debtor Robert Beighey is employed as a professor at Sullivan University in Louisville, Kentucky. Co-Debtor Penny Beighey is employed as a supervisor at Sunrise Children's Services in Mt. Washington, Kentucky. Both Debtors testified that a reduction in enrollment at Sullivan University, and a corresponding reduction in teaching income was the primary cause of the bankruptcy. Family medical issues also played a part in the decision to file for Chapter 7 relief.

The Debtors' 2016 Federal Tax Return reflected a combined income of $127,747 [UST Ex. 12], while the 2016 Kentucky State Tax Return showed a combined income of $128,602. [UST Ex. 13]. The 2017 tax returns reflected similar figures ($139,436 federal and $139,164 state). [UST Ex. 22]. According to Schedule I of income, the Debtors' net combined monthly disposable income is approximately $6,571.00. [UST Ex. 3].

The Debtors' household consists of themselves and one (1) minor child. [UST Ex. 7]. They live in a modest house, valued at approximately $140,000.00, with some $20,000.00 in equity in the house. The Debtors pay $847.00 per month on their mortgage obligation.

Mr. Beighey drives a 2012 Ford F-150 truck, which was purchased new in either 2012 or 2013. According to Schedule D of secured debt, Mr. Beighey owes approximately $20,572.00 on the truck as of the filing of the bankruptcy case.

According to the Reaffirmation Agreement filed July 7, 2017, entered into between the Debtors and Ford Motor Credit Company, Mr. Beighey owes approximately $19,149.76 on the truck and is required to make monthly payments of $683.92 for 27 more months. [UST Ex. 9].

Mrs. Beighey leases a 2015 Mazda CX-9. The lease agreement for the Mazda CX-9 obligates the Debtors to make monthly lease payments of $633.26 through November 2019. [UST Ex. 17]. Correspondingly, Schedule J of expenses reflects two car payments for the Debtors of

$634.00 and $684.00. [UST Ex. 7].

Mr. Beighey owes domestic support obligation arrearages to a former spouse, for which he pays via wage deduction in the amount $700.00 per month and will be paid in full in or around January, 2019. [UST Ex. 3].

Within their bankruptcy petition and schedules, the Debtors indicated $217,370.00 in nonpriority unsecured claims [UST Ex. 4], of which approximately $144,863.00 is attributable to non-dischargeable student loan debts. Part of Mr. Beighey's student loan obligations arose as part of a divorce decree for a child from a previous marriage. Mrs. Beighey incurred her student loan obligations in pursuit of an associate's degree and bachelor's degree during the period of 2001 through 2008. Approximately $112,000.00 ($78,000.00 owed to Navient and $33,000.00 owed to Nelnet) of the couple's total student loan obligations is attributable to Mrs. Beighey.

According to their amended Schedule J of expenses, Mr. and Mrs. Beighey's combined payment obligations on their student loan debts increased from $544.00 to $880.00 per month in November 2017. [UST Ex. 7].

In their Official Form 122A-2, Mr. and Mrs. Beighey indicated that a presumption of abuse arose in this Chapter 7 case. [UST Ex. 6]. This indication triggered a heightened review by the UST. The UST reviewed the information supplied by the Debtors to determine whether this case is in fact abusive of the Chapter 7 process. Through the analysis performed by Bankruptcy Auditor Gary C. Grimes, the UST believes that this case is abusive under either 11 U.S.C. § 707(b)(2) (the means test) or § 707(b)(3) (the totality of the circumstances test). Specifically, the UST alleges that the Debtors possess sufficient disposable income to fund a Chapter 13 case, which would pay a significant amount of their unsecured debt.

According to Mr. Grimes, taking into account mandatory IRS guidelines under the means test, the Debtors have approximately $2,222.74 in disposable income, which over a 60 month Chapter 13 plan, would provide approximately $133,364.00 to the Debtors' unsecured creditors. [UST Ex. 21]. The Debtors offered no evidence to contradict Mr. Grimes' conclusions.

This figure, however, does not account for the $880.00 in student loan payments, which the Debtors assert constitute special circumstances which should be factored into the mathematical calculation. If the student loans are considered special circumstances, the Debtors disposable income would still be $1,342.74 ($2,222.74 - $880.00), which would result in over $80,564.44 in debt repayment to unsecured creditors in a 60 month Chapter 13 repayment plan ($1,342.74 x 60). Again, the Debtors offered no evidence to rebut Mr. Grimes' conclusions.

Not using the means test figures, but instead relying upon the Debtors' scheduled expenses, with no adjustment to their lifestyles, Mr. Grimes testified that the Debtors' monthly disposable income was approximately $1,278.00. This figure is the amount available over the life of a Chapter 13 plan, even though the figure available at the beginning of the plan would be lower. Factoring in the end of the child support in 2019, and the payoff of the F-150 truck, Mr. Grime testified that in a 60 month step-up plan, the Debtors could pay approximately $54,678.00 or 75% of their unsecured debt. This figure also accounted for the Debtors continuing to make their $880 student loan payments. [UST Ex. 18]. As before, the Debtors offered no evidence to rebut Mr. Grimes' conclusions.

**IV. Dismissal for Abuse Under § 707(b)(2)**

Section 707(b) was added to the Bankruptcy Code in 1984 as part of the Bankruptcy Amendments and Federal Judgeship Act. Congress extensively amended this section in 2005 under

4

the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Post-BAPCPA, § 707(b) now provides that a Chapter 7 case may be dismissed, or converted to a Chapter 11 or 13 with consent of a debtor, to prevent abuse of the Chapter 7 provisions. Specifically, § 707(b)(1) provides, in part, as follows:

> . . . the court, on its own motion or on a motion by the United States trustee, . . . may dismiss a case filed by an individual debtor under this chapter [Chapter 7] whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter [Chapter 7].

According to section 707(b)(2)(A)(i):

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—
>
> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,700, whichever is greater; or
>
> (II) $12,850.

This formula has been incorporated into Bankruptcy Form 22A, Chapter 7 Statement of Current Monthly Income and Means Test Calculation, more commonly known as the "Means Test," which must be completed by every debtor filing a chapter 7 bankruptcy case.

In this case, under the criteria set forth in § 707(b)(2)(A)(i), the parties all agree that a presumption of abuse exists. In their Official Form 122A-2, the Debtors indicated that a presumption of abuse arose in this chapter 7 case.

This does not end the inquiry, however. In order to avoid the rigid and arbitrary application of this statute, Congress included in the statute a provision allowing debtors to demonstrate "special

5

circumstances" as a means of rebutting the presumption of abuse. § 707(b)(2)(B)(i). Congress provided illustrations of situations which it considered "special circumstances." These illustrations included a serious medical condition or a call or order to active duty in the Armed Forces. These examples should not be considered limiting. Through case law, other examples of "special circumstances" have been found, including high commuting costs, increased price of gas, additional housing expenses, costs of separate households, even maintaining a swimming pool. *See In re Batzkiel*, 349 B.R. 581 (Bankr. N.D. Iowa 2006); *In re Scarafiotti*, 375 B.R. 618 (Bankr. D. Colo. 2007); *In re Crego*, 387 B.R. 225 (Bankr. E.D. Wis. 2008); *and In re Graham*, 363 B.R. 844 (Bankr. S.D. Ohio 2007).

The determination of whether a particular circumstance is special should be made on a case-by-case basis. There is no per se circumstance that is special. *See generally In re Davis*, 2011 WL 5884015 (Bankr. N.D. Tex. 2011).

In this case, the UST argued that the Debtors' obligation to pay student loans does not constitute "special circumstances." Conversely, the Debtors argued that the student loan expenses should be considered a special circumstance.

In this Court's Order (the "Order"), entered February 1, 2018, the Court, after examining the three approaches to this issue (always, never, and sometimes), held that student loans may qualify as "special circumstances" depending on the facts of each case. *See Ord.,* February 1, 2018, at 5-6 [Doc. 47] *citing In re Edwards*, 2012 WL 3042233, at *6 (Bankr. N.D. Ala. 2012). When making a determination of whether "special circumstances" exists, factors to consider include debtors living modest lifestyles, situations wherein the debtors are not wholly responsible for their financial situation (lost job or medical expenses), debtors who obtained student loan debt for others, and

circumstances arising after the origination of the student loan. This Court also held that in "cases where the debtors live lavish lifestyles, incur large mortgages beyond their ability to repay, purchase expensive automobiles, the student loan expense would not and should not be considered a "special circumstance." *Order at p. 5*.

In this case, the evidence overwhelmingly supports the conclusion that these student loan expenses should be considered a "special circumstance." The Court finds that the Debtors live a modest lifestyle, their financial situation is attributable in some part to others, their decreased income was due to factors beyond their control, and at least some of the student loan debt is for a minor child. Moreover, the Debtors did not incur a large mortgage beyond their ability to repay, and did not purchase expensive, luxury automobiles. As such, the Court can easily conclude that, in this case and under these circumstances, the student loan obligations do constitute "special circumstances," thereby presumably rebutting the presumption of abuse.

Unfortunately for the Debtors, the inquiry does not stop here. Section 707(b)(2) goes on to state that the "special circumstances" exception has certain limitations. Specifically, § 707(b)(2)(B)(iv) provides

> The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of--
>
> (I) 25 percent of the debtor's nonpriority unsecured claims, or $7,7001, whichever is greater; or
>
> (II) $12,850.

§ 707.

Here, the Debtors cannot rebut the presumption of abuse because, even assuming the $880.00

7

monthly student loan payments constitute a "special circumstance," and a necessary and reasonable expense for which there is no reasonable alternative, the student loan expenses do not decrease the Debtors' monthly disposable income sufficiently that, when multiplied by 60, the monthly disposable income would be less than $54,342.50 (twenty-five percent of Debtors' total non-priority unsecured debts of $152,672.12) or $12,850. Reducing the Debtors' monthly disposable income by $880.00 yields a monthly disposable income of $1,342.74, or $80.564.40 over sixty (60) months—more than the threshold for presumptive abuse. *In re Thompson*, 457 B.R. 872, 882–83 (Bankr. M.D. Fla. 2011). *See also In re Maura*, 491 B.R. 493 (Bankr. E.D. Mich. 2013) (Presumption of abuse not rebutted if the additional expenses or adjustments to income, when applied to the debtor's means test numbers, do not change the end result of the means test to a level at which the presumption of abuse no longer arises).

Consequently, even though the student loan obligations constitute "special circumstances," the Debtors have not rebutted the presumption of abuse due to their high level of income.

The Court could stop with this determination and grant the UST's Motion to Dismiss on this ground alone. The Court will, however, also address the UST's Motion to Dismiss based upon the totality of circumstances test set forth in § 707(b)(3).

**V. Dismissal for Abuse Under § 707(b)(3)**

Consumer debtors who have enough disposable income to repay a significant portion of their debts are generally not permitted to file Chapter 7. They are subject to the "means test" mentioned above. If a debtor passes the means test, or rebuts the presumption of abuse, the Court must still dismiss a debtor's Chapter 7 case if the totality of the circumstances demonstrate abuse. 11 U.S.C. § 707(b)(3)(B).

Unlike its pre-BAPCPA predecessor, § 707(b)(3) now does not require a showing of "substantial abuse," but instead only requires a showing of the lower standard of "abuse." *See In re Mestemaker*, 359 B.R. 849 , 856 (Bankr. N.D. Ohio 2007) (emphasizing that "Congress has clearly lowered the standard for dismissal in changing the test from 'substantial abuse' to 'abuse.'").

Section 707(b)(3) provides as follows:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider--
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

§ 707(b)(3).

"When the UST moves to dismiss a case under § 707(b), it has the burden of proving abuse by a preponderance of the evidence." *In re Weixel*, 494 B.R. 895, 901 (B.A.P. 6th Cir. 2013).

The leading Sixth Circuit case for interpreting abuse under § 707(b)(3) is *In re Krohn*, 886 F.2d 123 (6th Cir. 1989). *Krohn* was decided in 1989 well before the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Nevertheless, courts have continued to apply its analysis. *See e.g., Moutousis v. United States Trustee (In re Moutousis)*, 418 B.R. 703, 708 (E.D. Mich. 2009); *In re Beckerman*, 381 B.R. 841, 844–45 (Bankr. E.D. Mich. 2008); *In re Arndt*, No. 17–30226, 2017 WL 5164141, at \*\*3, 27 (Bankr. N.D. Ohio November. 6, 2017); *In re Fletcher*, 463 B.R. 9 (Bankr. E.D. Ky. 2011).

*Krohn* set forth the test for abuse as follows:

> [A] court should ascertain from the totality of the circumstances

9

> whether [debtor] is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. See 4 Collier [on Bankruptcy] ¶ 707.07, at 707–20 [ (15th ed. 1989) ]. Substantial abuse can be predicated upon either lack of honesty or want of need.

*In re Krohn*, 886 F.2d at 126.

"Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. That factor alone may be sufficient to warrant dismissal." *Id.* (internal citation omitted). Debtors are "needy" when "[their] financial predicament warrants the discharge of [their] debts" in a Chapter 7 case. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004); *In re Shoup*, 2018 WL 1614188, at *5 (Bankr. N.D. Ohio 2018).

The UST's Motion does not question the honesty of the Debtors, but focuses on their ability to repay creditors and argues that–even with a deduction for student loan expenses and no lifestyle changes– they would have sufficient disposable income to make substantial payments toward their debts.

Mr. Grimes testified that in a 60 month plan, the Debtors could pay approximately $54,678 or 75% of their unsecured debt. This figure also assumed all unsecured creditors timely filed proofs of claims, which does not often occur. Should any unsecured creditor fail to timely file a proof of claim, this percentage could go higher. Mr. Grimes calculations factor in the Debtors continuing to make their student loan payments, the fact that the Debtors' truck will be paid off in 2019, as well as Mr. Beighey's domestic support obligation terminating in January 2019.

In this case, the Debtors' Schedules show that they are eligible to be debtors under Chapter 13. Their secured and unsecured debts are less than the Chapter 13 debt limits. *See* 11 U.S.C. §

109(e). Debtors have regular income that, at the time of the evidentiary hearing, appeared to be relatively stable, although it may have decreased due to reduced student enrollment.[1]

Under § 707(b)(3), the UST argues that Debtors have sufficient disposable income to repay a substantial portion of their unsecured debts out of future earnings in a Chapter 13 plan. The Court agrees with the UST's analysis. While the Court has no reason to believe that the Debtors filed this case in bad faith or that they have acted dishonestly, the Court cannot find that the Debtors are "needy" as that term is used in *Krohn*. Simply speaking, having $1,278 in monthly disposable income, which would pay over $54,000 in a 60 month plan, and which would pay approximately 75% of the unsecured debt is abusive under the totality of circumstances set forth in § 707(b)(3).

**VI. Conclusion**

In this case, the UST's Motion to Dismiss must be granted under either § 707 (b)(2) or § 707(b)(3). Even though the Debtors demonstrated that their student loan obligations constitute "special circumstances" as that term is used in § 707(b)(2)(B)(i), they still cannot rebut the presumption of abuse due to the application of § 707(b)(2)(B)(iv). Even accounting for the student loan payments, the Debtors' high income precludes them from rebutting the presumption of abuse. As such, dismissal is appropriate under § 707(b)(2). Moreover, even were the Court not to rely upon the "means test," this case would still have to be dismissed under § 707(b)(3) under the totality of circumstances test as explained in *Krohn*, *supra*.

Because this case is abusive under either §707(b)(2) or § 707(b)(3), the case is due to be dismissed. The Court will, however, allow the Debtors fourteen (14) days to convert to Chapter 13.

---

[1] The 2017 tax returns showed, however, that the Debtors income appears to be increasing from the amount of income earned in 2016. ($139,436 from $127,747).

11

Should they not convert within the time allowed, a separate order will be entered granting the UST's Motion and dismissing this Chapter 7 case. A separate Order consistent with this Memorandum Opinion will be entered this same date.

_____
Alan C. Stout
United States Bankruptcy Judge
Dated: June 15, 2018

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROBERT WALTER BEIGHEY and | ) | CASE NO. 17-31726 |
| PENNY COLLEEN BEIGHEY | ) | CHAPTER 7 |

### ORDER

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Debtors are allowed fourteen (14) days from the date of this order to file a motion to convert to a Chapter 13 case, absent which the United States Trustee's Motion to Dismiss [Doc. #23] will be **GRANTED**, and this case will be dismissed by separate order of the court.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: June 15, 2018